# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARLENE DAVIS ROBERTS,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **No. 16-1894** |
| | : | |
| **MERCY CATHOLIC MEDICAL CENTER** | : | |
| **and** | : | |
| **MERCY HEALTH SYSTEM OF** | : | |
| **SOUTHEASTERN PENNSYLVANIA,** | : | |
| | : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                     **April 23, 2019**

## MEMORANDUM OPINION

Plaintiff, Arlene Davis Roberts, has brought this wrongful termination and employment discrimination action against her former employer, Defendants Mercy Catholic Medical Center and Mercy Health System of Southeastern Pennsylvania. Plaintiff alleges that when she attempted to return from a period of medical leave taken to undergo treatment for cancer, Defendants refused to reinstate her, despite a guarantee in their 1992 employee handbook. Plaintiff further alleges that Defendants refused to hire her for a different position on the basis of her disability and age.

Plaintiff asserts discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), as well as a wrongful termination claim under Pennsylvania common law. Defendants have moved for summary judgment on each of Plaintiff's claims. For the reasons that follow, Defendants' Motion will be granted, and Plaintiff's claims dismissed.

# I.   FACTUAL & PROCEDURAL BACKGROUND

The following facts are set out in the light most favorable to Plaintiff and, unless indicated, are undisputed.

Plaintiff began employment with Defendants in 1992 as Business Office Manager. From 1998 to 2013, she served as Manager for Volunteer Services. (Defs.' SOF ¶¶ 11, 16; Pl.'s Resp. to Defs.' SOF ¶¶ 11, 16; Pl.'s SOF ¶¶ 1, 4, 10; Defs.' Resp. to Pl.'s SOF ¶¶ 1, 4, 10.)

### A.   Plaintiff's Breast Cancer Diagnosis and Period of Medical Leave

In October 2013, Plaintiff was diagnosed with breast cancer. Plaintiff informed Defendants' Human Resources Consultant Karoline McGuckin, who referred Plaintiff's request for medical leave to Defendants' Leave of Absence Specialist, Carole Moffo. On November 18, 2013, Ms. Moffo approved Plaintiff's application for medical leave under the Family and Medical Leave Act ("FMLA leave"), with such leave to run from November 20, 2013, through February 12, 2014. (Defs.' SOF ¶¶ 18–21; Pl.'s Resp. to Defs.' SOF ¶¶ 18–21; Pl.'s SOF ¶¶ 17–22; Defs.' Resp. to Pl.'s SOF ¶¶ 17–22.)

On February 7, 2014, Plaintiff received a letter from Ms. Moffo informing her that her period of FMLA leave was soon ending. The letter explained that if Plaintiff was unable to return to work by February 13, 2014, her employment at the hospital would be terminated and her position made available to others. However, the letter also provided instructions as to how Plaintiff could apply for 40 weeks of supplemental leave under Defendants' leave of absence policy. If approved for supplemental leave under that policy, Plaintiff could maintain her benefits, but would "no longer hold an active position within Mercy Health System." And although Plaintiff would be able to apply for a position at the end of the supplemental leave period, under the policy, "a position

[was] not guaranteed."[1] (Defs.' SOF ¶¶ 22; Pl.'s Resp. to Defs.' SOF ¶¶ 22; Pl.'s SOF ¶¶ 24–25; Defs.' Resp. to Pl.'s SOF ¶¶ 24–25; Pl.'s Resp., Ex. 11.)

Plaintiff was unable to return to work by February 13, 2014, and she applied for a supplemental leave of absence, which Ms. Moffo granted by way of a letter to Plaintiff. The letter reiterated the substance of the February 7 letter: during Plaintiff's supplemental leave, she would "no longer hold an active position within Mercy Health System," and though Plaintiff could apply for any available position after the supplemental leave ended, "a position [was] not guaranteed." The supplemental leave period ended July 20, 2014. (Defs.' SOF ¶¶ 23–25; Pl.'s Resp. to Defs.' SOF ¶¶ 23–25; Pl.'s SOF ¶¶ 38–40; Defs.' Resp. to Pl.'s SOF ¶¶ 38–40; Pl.'s Resp., Ex. 20.)

### B. Plaintiff's Unsuccessful Attempt to Return to Her Previous Position and Application for Supervisor of Patient Access Position

In late October 2014, after Plaintiff's doctor had cleared her to return to work, Plaintiff attempted to return to her position as Manager for Volunteer Services. Ms. McGuckin responded that the position was no longer available, but advised that Plaintiff could apply for any open position. On October 22, 2014, Defendants sent Plaintiff a letter that confirmed that, because Plaintiff did not attempt to return to work at the conclusion of her FMLA leave period, her employment at the hospital had been terminated. (Defs.' SOF ¶¶ 27, 29–31; Pl.'s Resp. to Defs.' SOF ¶¶ 27, 29–31; Pl.'s SOF ¶¶ 42–47; Defs.' Resp. to Pl.'s SOF ¶¶ 41–47; Pl.'s Resp., Ex. 22.)

---

[1] Plaintiff contends she was confused by the contents of the February 7, 2014, letter because the stated supplemental leave policy differed from the one in place at the time of her hiring in 1992. The 1992 policy provided that an employee would be reinstated to his or her prior position upon return from supplemental leave. The current policy—disclaiming any job protection in connection to an employee's supplemental leave—has been in effect since 2010. (Defs.' SOF ¶¶ 8–9; Pl.'s Resp. to Defs.' SOF ¶¶ 8–9; Pl.'s SOF ¶¶ 26–30, 33–34; Defs.' Resp. to Pl.'s SOF ¶¶ 26–30, 33–34.)

On January 27, 2015, Defendants posted for hire the position of Supervisor of Patient Access in the Emergency Department at Mercy Philadelphia Hospital, and Plaintiff submitted an application for that position. Defendants' Director of Patient Access, Leona Sperber, was the manager responsible for hiring for the position. (Defs.' SOF ¶¶ 43–47, 50; Pl.'s Resp. to Defs.' SOF ¶¶ 43–47, 50; Pl.'s SOF ¶¶ 48–52; Defs.' Resp. to Pl.'s SOF ¶¶ 48–52; Pl.'s Resp., Ex. 23.)

Upon receipt of Plaintiff's application, Ms. Sperber called Defendants' Human Resources Director, Laura Clift, to inquire whether "it was a requirement . . . to interview [Plaintiff] because [Ms. Sperber] wasn't sure if [Plaintiff] was an internal candidate," and Defendants' hiring policy stated a preference for hiring from within "whenever possible or practical." Ms. Clift told Ms. Sperber that she was not obligated to interview Plaintiff because Plaintiff was not an internal candidate. Ms. McGuckin in Human Resources also did not review Plaintiff's application because, according to Ms. McGuckin's uncontested testimony, Plaintiff was not a current employee and, under Defendants' policy, qualified internal candidates were to be interviewed and considered prior to any external candidates. Ms. McGuckin forwarded to Ms. Sperber fewer than five names of internal candidates for initial consideration. (Defs.' SOF ¶ 52; Pl.'s Resp. to Defs.' SOF ¶ 52; Pl.'s SOF ¶¶ 71–73, 77–79; Defs.' Resp. to Pl.'s SOF ¶¶ 71–73, 77–79; Sperber Dep. 52:9–19; McGuckin Dep. 36:7–21; Pl.'s Resp., Ex. 26.)

Though Ms. Sperber had conversations with three other internal candidates who expressed interest in the position,[2] she and Ms. McGuckin only interviewed one, Dana Lockett-Smith, who was eventually hired. Ms. Lockett-Smith was a non-disabled woman in her mid-thirties. Ms.

---

[2] The three internal candidates with whom Ms. Sperber discussed the Supervisor of Patient Access position each could not apply for various reasons. Two were informed that they "had counselings in their employee files that prevented them from being able to apply for the position." The other had faced difficulty staying late when requested, and thus she lacked the requisite flexibility for the position. (Defs.' SOF ¶¶ 55–57; Pl.'s Resp. to Defs.' SOF ¶¶ 55–57; Sperber Dep. 36:23–37:9.)

Sperber emailed Ms. McGuckin on March 6, 2015, to inform her that she had selected Ms. Lockett-Smith for the position. (Defs.' SOF ¶¶ 53–61; Pl.'s Resp. to Defs.' SOF ¶¶ 53–61; Pl.'s SOF ¶¶ 63–68; Defs.' Resp. to Pl.'s SOF ¶¶ 63–68; Pl.'s Resp., Ex. 29; Sperber Dep. 28:18–24, 38:4–19.)

### C. Plaintiff Applies for Social Security Disability Benefits

On March 18, 2014—shortly after Plaintiff began her period of supplemental leave under Defendant's policy—Plaintiff applied for Social Security Disability ("SSD") benefits. Plaintiff was required to do so in order to receive long-term disability benefits under her health insurance policy during her supplemental leave. As part of her application for SSD benefits, Plaintiff claimed that she could not work because of her breast cancer diagnosis and treatment. (Defs.' SOF ¶¶ 32–36; Pl.'s Resp. to Defs.' SOF ¶¶ 32–36; Pl.'s SOF ¶¶ 82–85; Defs.' Resp. to Pl.'s SOF ¶¶ 82–85; Pl.'s Resp., Ex. 30.)

The Social Security Administration ("SSA") denied Plaintiff's application for SSD benefits on August 4, 2014, finding that Plaintiff was not qualified for disability benefits because her cancer had been treated with surgery in June 2014 and since then there had been no reoccurrence or spread of the disease. Plaintiff appealed the SSA determination, requesting a hearing before an Administrative Law Judge ("ALJ"). (Pl.'s Resp., Exs. 29, 31, 33.)

At a hearing before an ALJ on August 5, 2016, Plaintiff testified under oath that she was unable to work full-time due to side-effects of her breast cancer and treatment, including fatigue, stomach pain, weakness in her arms, and some memory difficulties. The ALJ ultimately concluded that Plaintiff was disabled under the Social Security Act from October 17, 2003, until October 30, 2014, when she completed treatment for breast cancer. The ALJ also concluded that Plaintiff was still unable to perform "past relevant work" but had the residual functional capacity to perform

certain jobs such as data entry, scheduler, and receptionist. (Pl.'s Resp., Exs. 33; 34 at 15–16, 20–22, 23–24; 35 at 4–10.)

### D. The Instant Action

On April 21, 2016, Plaintiff filed suit against Defendants, asserting claims for, among other things: (1) failing to hire her due to her disability/perceived disability and age, in violation of, respectively, the ADA and ADEA, and (2) wrongful termination/breach of contract for terminating Plaintiff at the end of her supplemental leave of absence instead of reinstating her in accordance with Defendants' 1992 employee handbook.[3]

As to Plaintiff's failure to hire claims under the ADA and ADEA, Defendants argue that Plaintiff cannot establish a prima facie case because Plaintiff is estopped from claiming that she was qualified for the Supervisor of Patient Access position, in light of her testimony in the SSD hearing that she was unable to work full-time due to her condition. Alternatively, Defendants argue that Plaintiff's ADA and ADEA claims must fail because Defendants have proffered a legitimate, non-discriminatory reason for not hiring her—that they preferred an internal candidate—and Plaintiff cannot establish that this reason is mere pretext for discrimination. I agree with Defendants' latter argument, and will thus grant Defendants summary judgment on Plaintiff's ADA and ADEA claims.

---

[3] In a prior order entered on July 31, 2017, I granted in part and denied in part Defendants' Motion to Dismiss. Specifically, I dismissed Plaintiff's (1) ADA and ADEA claims arising from alleged discriminatory conduct occurring before November 22, 2014; (2) Pennsylvania Human Rights Act ("PHRA") disability and age discrimination claims arising from conduct occurring prior to March 22, 2015; (3) FMLA retaliation claim; and (4) wrongful termination/violation of public policy claim. (Doc. No. 16.)

As to Plaintiff's wrongful termination/breach of contract claim, Defendants argue that Plaintiff cannot overcome the presumption of at-will employment, and that the 1992 employee handbook did not create an enforceable contract that was breached by Defendants. Here again I agree with Defendants, and will grant Defendants summary judgment on this claim.

## II.    <u>LEGAL STANDARD</u>

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact in dispute, and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006). A factual dispute is "material" if it might affect the outcome of the suit under the appropriate governing law. <u>Id.</u> at 423. The non-moving party cannot avert summary judgment with speculation or conclusory allegations, but rather must cite to the record. Fed. R. Civ. P. 56(c); <u>Ridgewood Bd. of Educ. v. N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999). On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 256.

## III.  ANALYSIS

### A.  Plaintiff's ADA and ADEA Claims

The ADA makes it unlawful for an employer to refuse to hire a qualified individual on the basis of disability. 42 U.S.C. § 12112(a). Likewise, the ADEA prohibits employers from refusing to hire a qualified individual on the basis of advanced age. 29 U.S.C. § 623(a)(1). In order to make out a prima facie case for failure to hire under the ADA, a plaintiff must establish that (1) she was "disabled" within the meaning of the ADA; (2) she was qualified "or otherwise qualified" for the position; (3) she was rejected for the position; and (4) a non-disabled person was instead hired. See Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). Similarly, to establish a prima facie ADEA claim, a plaintiff must prove that (1) she was over 40-years-old; (2) she applied for and was qualified for the job; (3) she was rejected for the position; and (4) the employer filled the position was someone sufficiently younger to permit an inference of age discrimination. Fowle v. C & C Cola, 868 F.2d 59, 61 (3d. Cir. 1989); Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).

Under the McDonnell Douglas burden-shifting framework for ADA and ADEA claims, if the plaintiff produces sufficient evidence to establish a prima facie case, the burden of production shifts to the defendant, who must put forward a legitimate, non-discriminatory reason for the adverse employment decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). The plaintiff can then survive summary judgment at step three by presenting evidence that the employer's articulated reasons were pretextual. Keller, 130 F.3d at 1108 (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

Defendants first argue that Plaintiff is unable to establish a prima facie case because she cannot establish that she was qualified or otherwise qualified under the ADA or ADEA.[4] This is so, Defendants maintain, because Plaintiff is estopped by her testimony during her SSD appeal that she was too disabled to work a full-time job. Defendants point to Cleveland v. Policy Management Systems, Corp., 526 U.S. 795 (1999), which holds that where a plaintiff's ADA claim is inconsistent with her statements to the SSA in seeking disability benefits, the plaintiff must "proffer a sufficient explanation" for the inconsistency. Cleveland, 526 U.S. at 806. As the Supreme Court explained in Cleveland, "[w]hen faced with a plaintiff's previous sworn statement asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim." Id. To withstand a motion for summary judgment, the "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" Id.

Here, Plaintiff argues that she was confused by the questioning at the SSA hearing. Because of the two-year gap between the rejection of her SSD application in August 2014 and the appeal hearing in August 2016, she claims she did not understand which time period the ALJ was asking about. (See Pl.'s Dep. at 175:2–21.) Because, as explained below, Plaintiff cannot meet her burden

---

[4] Defendants in their Reply Brief also argued, for the first time, that Plaintiff's prima facie case under the ADA fails because Plaintiff cannot show that she was disabled within the meaning of the ADA at the time of her application for the Supervisor of Patient Access position, as her cancer had gone into remission by that time. (Defs' Reply Br. 5–6.) Because this issue was raised for the first time in Defendants' Reply Brief, and because I will grant Defendants' motion on other grounds, I need not reach this issue. See Alston v. Forsyth, 379 F. App'x. 126, 129 (3d Cir. 2010) ("There is cause for concern where a movant presents new arguments or evidence for the first time in a summary judgment reply brief, particularly if the District Court intends to rely upon that new information in granting summary judgment to the movant.").

at step three of the <u>McDonnell Douglas</u> framework, I need not reach Defendants' estoppel argument. I will instead assume that Plaintiff has met her burden for establishing her prima facie case and turn to the evidence that Plaintiff contends is sufficient to demonstrate that Defendants' legitimate, non-discriminatory rationale for not hiring Plaintiff—their preference for internal hiring—is pretextual.

A plaintiff can meet her burden at step three of the <u>McDonnell Douglas</u> framework and defeat a motion for summary judgment by producing evidence sufficient for a fact-finder to reasonably (1) disbelieve the defendant's reasons or (2) believe that a discriminatory reason more likely than not motivated the defendant's action. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d. Cir. 1994); <u>see also</u> <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 731 (3d Cir. 1995) ("If the plaintiff produces sufficient evidence of pretext, he need not produce additional evidence of discrimination beyond his prima facie case to proceed to trial."). In discrediting the employer's proffered reason, "a plaintiff cannot simply show that the employer's decision was wrong or mistaken" because the issue at this stage is whether the employer acted in a discriminatory manner, not whether the employer "is wise, shrewd, prudent, or competent." <u>Fuentes</u>, 32 F.3d at 765. Rather, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions" in the reasons put forward by the defendant that a reasonable factfinder "could rationally find them unworthy of credence . . . and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." <u>Id.</u> (emphasis deleted) (internal quotations and citations omitted).

Defendants assert that they hired Ms. Lockett-Smith for the Supervisor of Patient Access position, and not Plaintiff, in accordance with their stated policy of giving priority to internal candidates. (Defs.' Br. 16; Pl.'s Resp., Ex. 26 ("Mercy Health System's (MHS) policy is to hire/promote from within whenever possible or practical.")) Ms. Sperber, the hiring manager for

the position, and Ms. McGuckin in Human Resources offered undisputed testimony at their depositions that they only considered a handful of internal candidates—and only interviewed Ms. Lockett-Smith—and did not consider Plaintiff because she was an external candidate. (Sperber Dep. 52:9–19; McGuckin Dep. 36:7–21.)

Plaintiff offers three arguments as to why a reasonable jury could conclude that this rationale is pretextual: (1) Defendants' policy is to hire an internal candidate over an external candidate only when those candidates' qualifications are equal, and Plaintiff was more qualified than Ms. Lockett-Smith, (2) Defendants' posting of the position both internally and externally is inconsistent with their stated policy of preferring internal candidates, and (3) certain statements made by Ms. Sperber in her deposition evinced a discriminatory animus towards a person of Plaintiff's age. None of Plaintiff's arguments, however, are sufficient to create a genuine issue of material fact.

Plaintiff first argues that Ms. Sperber and Ms. McGuckin "openly violated Defendants' Job Posting/Transfer Policy at the time which gives preference to internal candidates *only when all criteria are equal*," because Plaintiff was more qualified than Ms. Lockett-Smith. (Pl. Br. 18 (emphasis added.)) Plaintiff references the policy's "Evaluation Criteria" section, which read, "Candidates will be selected on the basis of proven work experience, qualifications, and the interview. With all criteria equal, consideration to fill vacancies will be in the following order: Department, Operating Unit, Mercy Health System, Catholic Health East Trinity Health (CHE TH), and external candidates." (Pl.'s Resp., Ex. 26.)

Plaintiff's argument fails for two reasons. First, Plaintiff misreads Defendants' policy, failing to address the fact that the policy also provided that Defendants' "policy is to hire/promote from within *whenever possible or practical*." (Pl.'s Resp., Ex. 26 (emphasis added.)) The language

of the policy that Plaintiff emphasizes does *not* provide that preference would be given to internal candidates *only* when all criteria were equal, but, rather, provides that such preference be given whenever "possible or practical."

Second, Plaintiff's argument depends on her establishing that she is so much more qualified than Ms. Lockett-Smith that Ms. Lockett-Smith's status as an internal candidate could not plausibly have been the sole motivating factor in Defendants' hiring decision. (See Pl. Br. 18 ("Defendants would have this Court believe that they selected to fill this supervisory position a patient access representative over a former director solely based on the former being an internal candidate.")) However, as discussed below, the undisputed record belies this contention.

Plaintiff emphasizes that she possessed supervisory experience and had a bachelor's degree, while Ms. Lockett-Smith had no supervisory experience and only three years of college. But the posting for the position did not require, or even state a preference for, previous supervisory experience,[5] and the position only required a high school diploma or equivalent. (Pl.'s Resp., Ex. 24.) Moreover, Ms. Locket-Smith had an associate's degree and thirteen years of experience in the Patient Access department. (Defs.' SOF ¶ 59; Pl.'s Resp. to Defs.' SOF ¶ 59.) Though Plaintiff had previously worked in Patient Registration, that was eighteen years prior to the time of her application. (Defs.' SOF ¶ 62; Pl.'s Resp. to Defs.' SOF ¶ 62.) In the meantime, Ms. Lockett-Smith had become the "go to" leader in the department. (Defs.' SOF ¶ 58; Pl.'s Resp. to Defs.' SOF

---

[5] Defendants dispute the significance of Plaintiff's supervisory experience. Plaintiff had only managed hospital employees from 1992 to 1997 when she served as Business Office Manager; as Manager for Volunteer Services, she only supervised volunteers and student interns. But, because the posting for the job in question did not require or prefer any supervisory experience, the fact that Plaintiff possessed at least some relevant supervisory experience is not sufficient for a reasonable fact-finder to disbelieve Defendants' proffered non-discriminatory reason for hiring Ms. Lockett-Smith over Plaintiff—that Defendants preferred internal candidates. As discussed further below, the record at best supports an inference that Defendants selected a marginally less qualified candidate, which alone is not enough to create a genuine issue of material fact for trial.

¶ 58.) It is also undisputed that Ms. Lockett-Smith had more experience than Plaintiff using the relevant insurance portals and billing codes used in the Patient Access department. (Defs.' SOF ¶¶ 62–64; Pl.'s Resp. to Defs.' SOF ¶¶ 62–64.)

Even read in the light most favorable to Plaintiff, the record shows, at best, that Defendants picked a somewhat less-qualified candidate for the job. But that is a business decision and any disparity in the qualifications between Plaintiff and Ms. Lockett-Smith is not enough to show that a genuine issue of material fact exists for whether Defendants' proffered legitimate, non-discriminatory reason is "unworthy of credence." <u>Fuentes</u>, 32 F.3d at 765 ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."); <u>see also</u> <u>Robinson v. Matthews Intern. Corp.</u>, 368 F. App'x. 301, 306 (3d Cir. 2010) ("The decision to hire [the other person for the position] was ultimately a business decision, and simply because [the plaintiff] thinks he is more qualified for the . . . job does not entitle him to the position nor show discriminatory animus on the part of [the defendant]."); <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1997) (explaining how a plaintiff "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason").

Plaintiff next argues that Defendants' proffered reason for hiring Ms. Lockett-Smith—that they preferred internal candidates—cannot be believed because Defendants posted the position both internally and externally. Plaintiff maintains that Defendants "could have simply posted [the position] internally if they knew they had applications within the departments who would move into [the] position. . . . This clearly means that external candidates were to be considered for the

position." (Pl. Br. 16.) I disagree that a reasonable jury could find the mere external posting of a position to be inconsistent with a preference for internal candidates. Indeed, it makes good sense—for purposes of expediting the hiring process—for an employer with a preference for internal candidates to simultaneously solicit applications from internal and external candidates: in such case, the employer will have external candidate applications at hand in the event that no acceptable internal applications are submitted or in the event an external application is so impressive that it overcomes the preference for internal candidates.

That is what the undisputed facts reveal Defendants to have done in this case. As Ms. McGuckin explained, Defendants' practice was to give "priority" to internal candidates first, and only review external applications "if there was a need." (McGuckin Dep. at 35:14–18, 36:15–21.) The mere fact that the position was posted externally does not discredit Defendants' proffered legitimate, non-discriminatory reason that they gave priority to internal candidate first, and the undisputed conduct of Ms. McGuckin and Ms. Sperber is consistent with their stated preference.

Finally, Plaintiff argues that certain statements made by Ms. Sperber in her deposition evince discriminatory animus on the basis of age. In particular, Plaintiff highlights Ms. Sperber's comments that "If you do a good job for me, I believe you deserve to be rewarded in the department and move up and have an opportunity to *grow*," and "It's just my belief that I'm excited when I know that there's someone in the department that has *grown* and shown leadership skills; that's just me. I'm excited when it's an internal candidate that I can show my boss has *developed* and, you know, is just accepting more responsibility." (Sperber Dep. at 36:12–18, 38:14–19 (emphases added.)) Plaintiff argues that the words "grow," "grown," and "developed" indicate age bias.

Here again, I disagree with Plaintiff that a reasonable jury could reach such a conclusion. Ms. Sperber's deposition testimony merely references and explains Defendants' preference for hiring or promoting from within; it does not reasonably suggest discrimination based on age. And even if it did, such "stray remarks . . . are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ezold v. Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 506, 545 (3d Cir. 1992). Ms. Sperber's comments were made at her deposition, just shy of three years after the decision to hire Ms. Lockett-Smith. This single, facially-neutral comment, made years after the hiring decision, is not sufficient for a reasonable jury to conclude that age discrimination was "more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764.

In sum, there is not sufficient evidence for a reasonable fact-finder to disbelieve Defendants' stated legitimate, nondiscriminatory reason for hiring Ms. Lockett-Smith instead of Plaintiff. Accordingly, I will grant Defendants' Motion as to Plaintiff's ADA and ADEA failure-to-hire claims.

###    B.    **Plaintiff's Breach of Contract/Wrongful Termination Claim**

Plaintiff asserts that she was terminated wrongfully and in violation of the employee handbook she received in 1992 when she was initially hired. Plaintiff argues that the 1992 handbook contained a policy that an employee would be reinstated to his or her former position upon the end of his or her FMLA leave. Plaintiff also contends that the 1992 handbook constitutes an express contract sufficient to overcome the presumption of at-will employment. Defendants respond that the 1992 handbook explicitly disclaimed creating any specific terms of employment and, accordingly, Plaintiff cannot overcome the presumption of at-will employment.

Employment in Pennsylvania is presumed to be at-will. <u>McLaughlin v. Gastrointestinal Specialists, Inc.</u>, 750 A.2d 283, 286 (Pa. 2000). An employee in Pennsylvania can therefore be terminated for "any or no reason." <u>Raines v. Gaverford College</u>, 849 F. Supp. 1009, 1011 (E.D. Pa. 1994) (citing <u>Ruzicki v. Catholic Cemeteries, Inc.</u>, 640 A.2d 495, 497 (Pa. 1992)). To overcome the presumption of at-will employment, a plaintiff must demonstrate either: (1) an express contract, (2) an implied contract where circumstances around the hiring indicate that the parties did not intend the employment to be "at-will," or (3) that the employee gave the employer some additional consideration from which the court can infer that the parties intended to overcome the presumption of at-will employment. <u>Koller v. Riley Riper Hollin & Colagreco</u>, 850 F. Supp. 2d 502, 520 (E.D. Pa. 2012); <u>Veno v. Meredith</u>, 515 A.2d 571, 577 (Pa. 1986).

In order for an employee handbook to constitute an enforceable contract, "it must contain clear indication that the employer intend[ed] to overcome the at-will presumption." <u>Raines</u>, 849 F. Supp. at 1012. There is no such clear indication here. First, it is undisputed that Plaintiff signed an acknowledgement form upon beginning her employment in 1992 that read:

> I understand and agree that nothing contained in the Employee Handbook, other rules, regulations, or policies, or any practices, should be interpreted or construed as conferring employment for a specific term or as an employment contract. I further understand that both Mercy Health Corporation and I have the right to terminate the employment relationship with appropriate notice.

(Defs.' SOF ¶ 12, Pl.'s Resp. to Defs.' SOF ¶ 12; Pl.'s Resp., Ex. 12.) Second, the employee handbook presented by Plaintiff reads, "This handbook does not create any guarantee, employment contract, or any contract for benefits. All colleagues have the right to terminate their employment at any time with or without cause and [Defendants] retain[] the same right." (Pl.'s Resp., Ex. 12 at 3.) The handbook additionally states, "Changes in business occur constantly, and we retain the right to, and often do, alter policies and procedures to keep pace with changes in the health care

industry and Mercy Health Systems' organizational goals." (Pl.'s Resp., Ex. 12 at 3.) Because the express terms of the employee handbook do not contain any indication the employer intended to overcome the presumption of at-will employment, the handbook does not constitute an enforceable contract. <u>See</u> <u>Martin v. Capital Cities Media</u>, 511 A.2d 830, 839 (Pa. 1986) ("It is significant here that the employer unilaterally distributed the handbook and retained the right to unilaterally alter the handbook at-will. This lends support to our holding that a reasonable employee would not understand the at-will presumption to have been overcome by the handbook provision in question.").

Because Plaintiff cannot overcome the presumption of at-will employment, Plaintiff does not raise any genuine issue of material fact for trial and Defendants are entitled to judgment as a matter of law. Accordingly, I will grant Defendants' Motion for Summary Judgment as to that claim.

C.      **CONCLUSION**

For the reasons set out above, Defendants' Motion for Summary Judgment will be granted and judgment will be entered in favor of Defendants as to each of Plaintiff's claims.

An appropriate Order follows.